# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN PAUL BLANCO,<br><br>                      Petitioner,<br>  vs.<br>MICHAEL MCDONALD, Warden,<br><br>                      Respondent. | CASE NO. 09cv1849-H (AJB)<br><br>**ORDER DENYING THE HABEAS PETITION** |

On August 24, 2009, Normal Paul Blanco ("Petitioner"), a prisoner proceedings *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.) Petitioner claimed insufficient evidence supported his conviction for assault with a deadly weapon on a peace  officer.  (Doc. No. 1 at 6.)  On November 9, 2009, Respondent filed an answer. (Doc. No. 11.) On December 8, 2009, Petitioner filed a traverse. (Doc. No. 14.) On January 29, 2010, the magistrate judge issued a report and recommendation denying Petitioner's habeas petition. (Doc. No 15.) On February 26, 2010, Petitioner filed objections to the report and recommendation.  (Doc. No. 16.)

After due consideration, the Court denies the habeas petition.

## **BACKGROUND**

On March 1, 2006, Petitioner was convicted of: (1) assault with a firearm; (2) two counts of discharge of a firearm in a grossly negligent manner; (3) unlawfully taking and

driving a vehicle; (4) evading an officer with reckless driving; (5) hit and run driving; (6) assault with a deadly weapon on a peace officer; (7) possession of a firearm by a felon; and (8) unlawful possession of ammunition. (Lodg. 1 at 295-303.) On August 18, 2006, the trial court sentenced Petitioner. (Lodg. 1 at 635-36.) On September 6, 2006, Petitioner filed a direct appeal in the California Court of Appeal, Fourth Appellate District, Division One, alleging multiple errors including a claim that insufficient evidence supported his conviction for assault with a deadly weapon on a peace officer. (Lodg. 5.) On July 22, 2008, in an unpublished opinion, the court of appeal denied the insufficient evidence claim on the merits. (Lodg. 15 at 7-8.) On August 29, 2008, Petitioner filed a petition for review in the California Supreme Court. (Lodg. 16.) On October 1, 2008, the California Supreme Court denied review. (Lodg. 17.) On August 24, 2009 Petitioner filed a petition for writ of habeas corpus in this Court claiming insufficient evidence supported his conviction for assault with a deadly weapon on a peace officer. (Doc. No. 1.)

Federal habeas courts presume the correctness of a state court's determination of factual issues unless Petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (2006). See Pollard v. Galaza, 290 F.3d 1030, 1035 (9th Cir. 2002). The parties do not challenge the accuracy of the California Court of Appeal's summary of the underlying facts, although Petitioner disputes his guilt on the assault with a deadly weapon on a peace officer. The court of appeal summarized the underlying facts as follows:

> Chula Vista Police Officer Sarah Sharpe testified that on September 12, 2004, at approximately 8:00 p.m., she responded to a call that shots had been fired at Blanco's residence. Sharpe met Shendel Dame, Blanco's girlfriend, who gave her the following account: Dame and Blanco were together when another woman Blanco was romantically involved with -Vickie Pena- showed up to visit Blanco. An argument ensued between Blanco and Dame. Blanco fired a gunshot into the floor. He "pulled [Dame's] hair and yanked her neck back and held the gun up to her neck," telling Dame, "Dare me? You fucking don't think I'll do it, do you [?]" He blocked both women from leaving the apartment. Dame locked herself inside the bathroom, and heard Blanco fire three shots in her direction. A few minutes later, she opened the bathroom door. She saw Blanco holding a gun pointed directly at her, and she slammed

the door.

The next day, Officer Sharpe responded to another call at Blanco's apartment. Dame and Pena were there. Dame told Sharpe she had returned to Blanco's apartment to pick up her belongings, and she called the police from there. After Dame finished the phone call, she realized Blanco had left in Pena's car.

Chula Vista Police Officer Frank Giaime testified that on September 13, 2004, he responded to a call at Blanco's residence. Dame informed Giaime that Blanco was at her family's apartment located at 307 Ash Street in Chula Vista. Giaime went there and saw Blanco leaving the apartment and running to a parked vehicle. Giaime drew his gun and ordered Blanco to stop, but Blanco got into the vehicle and sped away. Giaime and another officer pursued him using their lights and siren. A police helicopter reported Blanco's movements to Giaime, who reached Woodlawn Avenue and E Streets, and exited his police car. Approximately ten seconds later, Giaime heard three loud pops, which he assumed was gunfire. When he saw Blanco approaching, Giaime drew his weapon and ordered him to stop. Blanco ducked down and accelerated past Giaime. Returning to his car, Giaime heard another loud sound, and saw Blanco had crashed into another vehicle. Giaime went to the collision scene and saw Blanco standing outside his vehicle. Blanco turned and ran. Giaime chased him as he jumped over a fence. A citizen intervened and held Blanco down until Giaime arrived and apprehended Blanco.

Chula Vista Police Officer Fred Rowbotham testified he responded to the call at 307 Ash Street. He was dressed in his uniform, and proceeded to handle traffic control at an intersection. He watched as Blanco left the apartment, eluded the other police officers, ran to a vehicle, and drove away. Rowbotham turned on his motorcycle lights and siren, and chased Blanco through city streets and into a strip mall parking lot. While other officers pursued Blanco, Rowbotham stopped his motorcycle in the parking lot. Blanco drove towards Rowbotham, who pulled out his gun. As Blanco raced past him, Rowbotham saw "[Blanco's] whole upper body was . . . level or lower than the dashboard of the vehicle. He was completely laying across the seats." Rowbotham testified that as Blanco passed him, they "had eye-to-eye contact the whole time."

Office Rowbotham exited the parking lot, drove south on Woodlawn Street and immediately saw Blanco approach from around a corner, straddling the center line and driving "possibly at the fastest possible speed you could make that corner as a vehicle . . . the suspension was extended, the vehicle was sliding around the corner." Rowbotham jumped off his motorcycle, and ran. He pulled out his gun. He testified, "I just wanted to get out of the road. I thought for sure he was trying to run me over." Blanco drove to within approximately one foot of Rowbotham, who fired three shots. Rowbotham estimated

        Blanco was driving at 50 miles an hour.

        Chula Vista Police Officer Tom Craft testified he was directing traffic at the intersection of Broadway and F Streets, and saw Blanco leave the apartment at 307 Ash Street. Blanco got into a vehicle and in reverse drove speedily towards Craft, knocking over the cones in front of his police vehicle. Craft turned on his lights and siren, and pursued Blanco. Craft stopped approximately 15 feet behind Rowbotham and saw Blanco's vehicle, straddling the center line, accelerating towards them. Craft saw Rowbotham appear to fall from his motorcycle, and Blanco driving between Rowbotham and the motorcycle. Craft testified, "I thought that [Blanco's] vehicle was going to strike [Rowbotham], when the first shot went off. That's what I saw. It was --[Blanco] was only three, four feet away from the front bumper of the vehicle." Craft estimated Blanco was driving at 40 to 50 miles an hour, and the passenger side of Blanco's vehicle passed within two to three feet of Rowbotham.

        Chula Vista Police Office Don Clarke testified, "I remember seeing [Rowbotham] coming around the front bumper, he was trying to get out of the way, moving very quickly towards the curb, and shooting as he was moving towards the curb." Clarke estimated Blanco's vehicle came to within three to five feet from the curb.

        Suzanne Martin testified she was at work and looking out the window. She saw "the motorcycle cop was standing in the middle of the street, and when [Blanco's vehicle] came back out of the driveway, he was headed right toward [Rowbotham]. [¶] [Rowbotham] drew his gun."

        Victor Guerrero testified he was a passerby and saw the police chase Blanco's vehicle. Guerrero saw Rowbotham drop his motorcycle in the middle of the street. Blanco's car accelerated and reached directly in front of Rowbotham, who fired at it three times.

(Lodg. 15 at 3-6.)

## DISCUSSION

### A. Standard of Review

The district court "shall make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1) (2006). Petitioner objects to the report and recommendation. (Doc. No. 16.) Accordingly, the Court reviews de novo the report and recommendation.

Federal habeas petitions filed after April 24, 1996, are governed by AEDPA. See 28

U.S.C. § 2254(d) (2006); Lindh v. Murphy, 521 U.S. 320, 336-37 (1997). AEDPA provides the following standard of review applicable to state court decisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

AEDPA establishes a "highly deferential standard for evaluating state-court rulings" requiring that "state-court decisions [are] given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). A state court's decision is "contrary" to clearly established federal law if it applies a rule that contradicts governing Supreme Court authority or it "confronts a set of facts that are materially indistinguishable from" a Supreme Court decision and reaches a different result. Early v. Packer, 537 U.S. 3, 8 (2002). Clearly established federal law refers to the holdings, not the dicta, of Supreme Court decisions at the time of the relevant state court decisions. Williams v. Taylor, 529 U.S. 362, 412 (2000). The state court's application of federal law is unreasonable if it correctly identifies the governing legal rule but applies it unreasonably to the facts of the particular state prisoner's case. Williams, 529 U.S. at 407. A state court's application of federal law is unreasonable only if it is "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (citation omitted). An "incorrect or erroneous" application does not warrant habeas relief. Id.

Federal habeas courts determine the reasonableness of the state court's application of federal law by reviewing the state's last reasoned decision. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). When there is no reasoned decision from the state's highest court, the reviewing federal court "looks through" to the rationale of the underlying reasoned appellate court decision. Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); Campbell v. Rice, 408 F.3d 1166, 1170 (9th Cir. 2005). A state court need not cite Supreme Court precedent when

resolving a habeas corpus claim. Early, 537 U.S. at 8. The state court's decision will not be contrary to clearly established federal law "[s]o long as neither the reasoning nor the result of the state court decision contradicts [Supreme Court precedent]." Id.

### B. Sufficiency of the Evidence

Petitioner claims there was insufficient evidence to support his conviction for assault with a deadly weapon against a peace officer. (Doc. No. 1 at 6.) Specifically, Petitioner claims there was insufficient evidence to support a finding that he was aware his driving would probably and directly result in the application of physical force to Officer Rowbotham because he was fleeing from gun fire and not attempting to hit Officer Rowbotham with his car. (Doc. No. 1 at 6.) Respondent argues there was sufficient evidence to support the conviction and the California Court of Appeal's decision reasonably applied clearly established federal law. (Doc. No. 11-1 at 9-11.)

The Fourteenth Amendment's due process clause requires a conviction to be based upon sufficient evidence that convinces a trier of fact beyond a reasonable doubt of the existence of every element of the charged offense. Jackson v. Virginia, 443 U.S. 307, 315-16, 324 n.16 (1979) ("[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."); In re Winship, 397 U.S. 358, 364 (1970). The evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319. Under AEDPA, the Court applies the Jackson standard with an additional layer of deference because habeas relief is only available if the California Court of Appeal's decision unreasonably applied Jackson to the facts before them. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).

Under California law, a conviction for assault with a deadly weapon against a peace officer requires the prosecutor to prove the following elements: (1) the defendant committed an assault with either a deadly weapon or by means likely to produce great bodily injury; (2) the victim was a peace officer; (3) at the time of the assault the peace officer was engaged in the performance of his or her duties; (4) the defendant knew or reasonably should have known

the that victim was a peace officer; and (5) the defendant knew or reasonably should have known that the peace officer was engaged in the performance of his or her duties. CAL. PENAL CODE § 245(c) (2009). An assault is an "unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240 (2009). An assault is a general intent crime that only requires an "intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." People v. Williams, 26 Cal.4th 779, 790 (2001) ("[T]he test of natural and probable consequences is an objective one. . ."). An assault does not require a specific intent to cause injury or subjective awareness of the risk that injury might occur. Williams, 26 Cal.4th at 790. A car may be a deadly weapon in an assault when it is driven directly at a police officer during a police pursuit. People v. Claborn, 224 Cal.App.2d 38, 42 (1964).

Here, the Court denies Petitioner's sufficiency of the evidence claim. On direct review, the California Court of Appeal analyzed the evidence before the jury as follows:

> Testimony from several witnesses quoted above provided substantial evidence to support the jury's verdict. The testimony of Rowbotham, Craft, Clarke, Martin and Guerrero indicated that Rowbotham was stopped on his motorcycle in the middle of the street, and Blanco was driving rapidly at Rowbotham. Rowbotham testified he was sure Blanco was going to run him over, and he had to dismount from his motorcycle, run, and fire his gun to avoid being hit.
>
> We reject Blanco's contention that "his actions in attempting to escape shots fired toward him by Officer Rowbotham did not constitute a willful or purposeful act of application of deadly force" because Blanco incorrectly states the order of events. Rowbotham fired the shots only after Blanco drove directly at him, and he had to flee from Blanco's path to avoid being hit. Further, substantial evidence supported the jury's conclusion that Blanco acted willfully. Blanco ignored several orders to stop and was fleeing from the police.

(Lodg. 15 at 7-8.)

Based on the trial record, the jury could rationally find these elements were established by the testimony of Officer Rowbotham, Officer Craft, Officer Clark, Mrs. Martin, and Mr. Guerrero. (Lodg. 15 at 3-6.) The testimony of these individuals, when viewed in the light most favorable to the prosecution, could sufficiently establish that Officer Rowbotham was a peace officer engaged in his duties at the time of the assault and that Petitioner knew or should have known this. Jackson, 443 U.S. at 319. (Lodg. 15 at 3-

6.) This same testimony could also sufficiently establish that Petitioner assaulted Officer Rowbotham with a deadly weapon because Petitioner drove his motor vehicle directly at Officer Rowbotham at a speed of around 40-50 miles per hour, came within feet of hitting Officer Rowbotham, and forced Officer Rowbotham to flee to avoid being hit. Claborn, 224 Cal.App.2d at 42. (Lodg. 15 at 3-6.) Lastly, this testimony could establish that Petitioner drove his car at Officer Rowbotham intentionally because he was fleeing from the police, Officer Rowbotham was attempting to stop him, and Officer Rowbotham did not fire his gun until Petitioner was driving directly at him. Williams, 26 Cal.4th at 790. (Lodg. 15 at 3-6.) Accordingly, the Court denies the habeas petition as the state court's decision was objectively reasonable. Jackson, 443 U.S. at 319; Wiggins, 539 U.S. at 520-21.

### C. Certificate of Appealability and Evidentiary Hearing

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2006). When the district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). Here, the Court denies a certificate of appealability. The Court also denies an evidentiary hearing because the habeas petition can be resolved by reference to the state court record. Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

////
////
////
////
////
////
////
////

## **CONCLUSION**

After due consideration, the Court denies the habeas petition. The Court also denies a certificate of appealability.

**IT IS SO ORDERED.**

DATED: March 19, 2010

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:

All parties of record.